UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| GENYA FRENKEL, | : | |
|     Plaintiff, | : | |
| | : | |
| v. | : | CIVIL ACTION NO. |
| | : | 3:07-cv-1145 (VLB) |
| UNITED STATES DEPARTMENT OF | : | |
| HOMELAND SECURITY, CITIZENSHIP | : | |
| AND IMMIGRATION SERVICES, ET AL., | : | |
|     Defendant. | : | October 19, 2007 |

**MEMORANDUM OF DECISION AND ORDER DENYING THE DEFENDANTS' MOTION TO DISMISS [Doc. #9]**

The plaintiff, Genya Frenkel ("Frenkel"), initiated this action on July 27, 2007, against the defendants, the United States Department of Homeland Security, Citizenship and Immigration Services ("CIS"), the Federal Bureau of Investigation, the Attorney General of the United States, the Secretary of the United States Department of Homeland Security, the director of CIS, and the district director of CIS with jurisdiction over naturalization applications filed in Connecticut, pursuant to 8 U.S.C. § 1447(b) ("§ 1447(b)") for failure to make a determination on her application for naturalization within 120 days of conducting an examination.

After the complaint was filed, on July 31, 2007, CIS denied Frenkel's application. The defendants filed this motion to dismiss for lack of subject matter jurisdiction, claiming CIS's denial of the application rendered this action moot. For the reasons hereinafter set forth, the defendants' motion to dismiss is

1

DENIED, and this court asserts exclusive jurisdiction over Frenkel's application as of July 27, 2007, CIS's denial of the application had no force or effect and was null and void ab initio.

The following facts are relevant to this motion. On October 11, 2005, Frenkel filed an application for naturalization with CIS. As part of her application, Frenkel submitted a Form N-648 Medical Certification for Disability Exceptions claiming a medical exemption from meeting the English language, history and civics requirements to be naturalized. [Doc. #13, Ex. A, C]

CIS twice interviewed Frenkel in connection with her application, first on March 14 and again on June 7, 2006. On June 8, 2007, Frenkel contacted CIS regarding the status of her application for naturalization. On June 28, 2007, CIS informed Frenkel her application was under supervisory review. On July 26, 2007, Frenkel's attorney contacted the United States Attorney's office for the District of Connecticut requesting an inquiry into the status of her application, and stated that if no response was received by the end of that day she would commence this action in federal district court. [Doc. #15, Ex. 1] Later that day, Frenkel was informed via telephone that the application had been denied because of an incomplete Form N-648, that a denial had been prepared, reviewed and signed, and that it would be delivered shortly.

On July 27, 2007, more than one year after CIS examined her, Frenkel initiated this action pursuant to § 1447(b), asking the court to review her application for naturalization de novo and, upon granting the application,

administer the oath of citizenship, or, in the alternative, remand the application to CIS with specific instructions that it approve the application. [Doc. #1] On August 8, 2007, Frenkel received a letter from CIS denying her application. The denial is dated July 31, 2007, four (4) days after this action was filed. [Doc. #15, Ex. A]

On August 20, 2007, the defendants filed the current motion to dismiss asserting that under § 1447(b) CIS and the district court have concurrent jurisdiction to rule on an application for naturalization following initiation of a civil action pursuant to that statute. [Doc. #9] The defendants argue that CIS retained authority to deny Frenkel's application after the filing of the complaint, and its July 31, 2007, denial of Frenkel's application is valid. As a result, the defendants argue that this action is moot, the court should dismiss the action and Frenkel must exhaust the administrative remedies contemplated by 8 U.S.C. § 1421(c) prior to commencing an action in federal court.[1]

Frenkel counters that § 1447(b) confers exclusive jurisdiction over the application on the district court - and strips CIS of its jurisdiction - as soon as a federal court action is filed. [Doc. #13] CIS had no authority to deny Frenkel's application once this action was commenced on July 27, 2007. The July 31, 2007, denial letter has no force or effect, Frenkel's application is still pending a

---

[1]The defendants do not claim that the action is moot because Frenkel was notified her application had been denied via telephone on July 26, 2007. A denial must be in writing and contain specific citations to the statutory sections upon which the denial is based. See 8 C.F.R. § 336.1.

3

determination and this action is not moot.

The question presently before this court is does § 1447(b) confer exclusive jurisdiction on the district court to adjudicate an application for naturalization upon initiation of a federal court proceeding, or does that statute confer concurrent jurisdiction on both the district court and CIS until a final determination on the application is made by either entity?

An applicant for naturalization may commence a federal court action under § 1447(b) seeking determination of her application if more than 120 days have passed since CIS conducted its examination and no decision has been made. The statute reads:

> If there is a failure to make a determination under [8 U.S.C. § 1446] before the end of the 120-day period after the date on which the examination is conducted under such section, the applicant may apply to the United States district court for the district in which the applicant resides for a hearing on the matter. Such court has jurisdiction over the matter and may either determine the matter or remand the matter, with appropriate instructions, to [CIS] to determine the matter.

8 U.S.C. § 1447(b).

It is undisputed that § 1447(b) confers subject matter jurisdiction over an application for naturalization on the district courts. The Second Circuit has not addressed the issue of whether § 1447(b) vests the district courts with exclusive jurisdiction or concurrent jurisdiction. However, the only two courts of appeals to speak on this issue to date have found congress intended exclusive

jurisdiction over an application subject to § 1447(b) to rest with the district courts.  The defendants were unable to cite any controlling or persuasive authority to the contrary.

In 2004, the Ninth Circuit, sitting en banc, unanimously held that § 1447(b) confers exclusive jurisdiction on the district courts.  United States v. Hovsepian, 359 F.3d 1144 (9th Cir. 2004) (en banc).  Since Hovsepian, a majority of district courts interpreting § 1447(b) have agreed with the Ninth Circuit and found CIS lacks the authority to determine an application once an applicant initiates an action pursuant to that statute.  See, e.g., Alhamedi v. Gonzales, No. 07 Civ. 2541 (JGK), 2007 Dist. Lexis 39601 (S.D.N.Y. May 30, 2007); Zaranska v. United states Dep't of Homeland Sec., 400 F. Supp. 2d 500 (E.D.N.Y. 2005); Dimopoulos v. Blakeway, No. C-07-127, 2007 U.S. Dist. Lexis 20920 (S.D. Tex. Mar. 23, 2007).  But see Perry v. Gonzales, 472 F. Supp. 2d 623 (D.N.J. 2007); Al-Saleh v. Gonzales, No. 2:06-CV-00604 TC, 2007 U.S. Dist. Lexis 23837 (D. Utah Mar. 28, 2007).  In August 2007, the Fourth Circuit similarly found exclusive jurisdiction lies with the district courts.  Etape v. Chertoff, ___ F.3d ___, No. 06-1916, No. 06-1990, 2007 U.S. App. Lexis 18348 (4th Cir. Aug. 2, 2007).

The Hovsepian and Etape courts relied on similar logic in finding exclusive jurisdiction.  The courts of appeals began their analyses by looking to the text of § 1447(b), that provides the district court with two options when considering an application: "determine the matter or remand the matter, with appropriate instructions, to [CIS] to determine the matter."  8 U.S.C. § 1447(b).  The option for

5

remand from the district court to CIS creates a hierarchical structure whereby the court is the final arbiter and CIS is subject to the court's authority to rule. Etape, U.S. App. Lexis 18348 at *10-11; Hovsepian, 359 F.3d at 1160-61. Providing the district court the statutory authority to remand an application would be meaningless if CIS already possessed the jurisdiction to make a determination after the filing of a complaint. Etape, U.S. App. Lexis 18348 at *10-11; Hovsepian, 359 F.3d at 1160-61. Additionally, the district court's power to remand "with appropriate instructions" signifies the district court's authority to dictate the timing, procedure and outcome of an application's determination, all hallmarks of jurisdiction. Etape, U.S. App. Lexis 18348 at *11-12; Hovsepian, 359 F.3d at 1160-61. The language of the statute clearly implies the district court is meant to exercise exclusive jurisdiction unless the application is remanded to CIS. Etape, U.S. App. Lexis 18348 at *11-12; Hovsepian, 359 F.3d at 1160-61.

The courts of appeals next evaluated § 1447(b) within its statutory context. Congress enacted § 1447(b) as part of the Immigration Act of 1990, that also provides that an applicant can appeal to the district court for a de novo review after CIS denies an application after exhausting the available administrative remedies. 8 U.S.C. § 1421(c). The statute as a whole vests final decision making authority on the district courts. Etape, U.S. App. Lexis 18348 at *15-19; Hovsepian, 359 F.3d at 1162-63. Under a concurrent jurisdiction scheme, CIS could make a ruling on an application before the district court conducted its review, effectively divesting the district court of its jurisdiction and authority.

6

**Etape**, U.S. App. Lexis 18348 at *15-19; **Hovsepian**, 359 F.3d at 1162-63. Allowing CIS to strip the district court of its jurisdiction and authority would be contrary to the overall scheme outlined in the Immigration Act of 1990, and plainly counterintuitive. **Etape**, U.S. App. Lexis 18348 at *15-19; **Hovsepian**, 359 F.3d at 1162-63.

Finally, the courts of appeals considered congress's expressed intent when enacting the statute, identifying four policy objectives. **Etape**, U.S. App. Lexis 18348 at *16-19; **Hovsepian**, 359 F.3d at 1163-64. First, congress wanted to reduce the waiting period for applicants. By offering exclusive jurisdiction to the district courts over an application after 120 days have passed as an option to applicants, congress provided CIS with an incentive to determine an application in a timely manner or be stripped of its authority to consider that application. **Etape**, U.S. App. Lexis 18348 at *18; **Hovsepian**, 359 F.3d at 1163. Otherwise, CIS could deny the application and further the delay resolution by imposing upon the applicant a duty to exhaust administrative remedies, protracting rather than expediting the process.

Second, congress intended to streamline the naturalization process and conserve governmental and judicial resources. A system of concurrent jurisdiction would result in duplicative efforts on the part of the district courts and CIS. **Etape**, U.S. App. Lexis 18348 at *18; **Hovsepian**, 359 F.3d at 1163-64. The defendants' exhaustion argument illustrates this point.

Third, the statute as a whole was meant to provide consistent and fair

7

determinations of all applications.  A concurrent jurisdiction scheme could result in a race to beat the district court to judgment by CIS, thereby creating rushed or incomplete determinations of applications.  Hovsepian, 359 F.3d at 1164.

Fourth, congress intended that an applicant have the ability to choose the forum in which her application would be considered if CIS failed to reach a timely determination.  Only exclusive jurisdiction could satisfy that goal.  Id.; Etape, U.S. App. Lexis 18348 at *17-19.

This court finds the reasoning in Hovsepian and Etape persuasive.  Vesting the district courts with exclusive jurisdiction satisfies the intent behind the statute when enacted, fits logically within the statutes overall scheme, and comports with the text of the statute as written.

Additionally, the court takes note of the potential prejudice to applicants under a system of concurrent jurisdiction.  What would prevent CIS from summarily denying applications once a district court action was filed pursuant to § 1447(b) to avoid the time and effort of defending the action, the rush to make a decision prior to the district court, or simply explaining its delay in making a determination?  Exclusive jurisdiction protects the applicant from such truncated determinations while leaving the district court the option to remand to CIS in the appropriate circumstances.

The defendants rely primarily on the District of New Jersey's decision in Perry in support of their argument for concurrent jurisdiction.  As a preliminary matter, it should be noted that the court in Perry relied almost exclusively on the

District of Maryland's decision in Etape v. Chertoff, 446 F. Supp. 2d 408 (D. Md. 2006), the very case recently overturned by the Fourth Circuit in Etape. This certainly gives cause to question the defendants' position.

The court in Perry recognized congress's intention to streamline the application process, conserve resources and reach a speedy decision when enacting § 1447(b), but came to a different conclusion on how best to fulfill that intention. Perry, 472 F. Supp. 2d at 628-29. In the Perry court's opinion, concurrent jurisdiction allows an application to be ruled on in a first-come-first-serve manner, guaranteeing the fastest result and sparing the resources of the non-deciding entity. Id. at 629. In support, the court uses the example of an application CIS would grant under concurrent jurisdiction but cannot act on under exclusive jurisdiction without judicial assistance. Id. at 629-30.

In the situation contemplated by Perry, presumably the parties would notify the district court that CIS intended to grant an application, obviously the desired result for an applicant. The applicant could then voluntarily withdraw her complaint, the parties could file a joint stipulation of dismissal or the district court could issue a simple remand order instructing CIS to grant the application. The amount of time, energy and expense required by the district court to dispose of the case in such instances is minuscule, and the burden is outweighed by the benefits of protecting applicants against summary denials through exclusive jurisdiction.

Based on the foregoing reasons, the defendants' motion to dismiss is

**DENIED. The court finds 8 U.S.C. § 1447(b) vests the district courts with exclusive jurisdiction over an application as of the date a complaint is filed. Any action taken by CIS after such date is not valid. CIS's July 31, 2007, denial of Frenkel's application is thus null and void and the application is still pending. This court will exercise its exclusive jurisdiction and, after due consideration, the court will either determine the application or remand it to CIS for a determination.**

                **IT IS SO ORDERED.**

                <u>     /s/     </u>

                **Vanessa L. Bryant**

                **United States District Judge**

**Dated at Hartford, Connecticut: October 19, 2007.**